UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEAN J. SANDSTROM,

                                                                            REPORT
                              Plaintiff,                                     and
               v.                                                 RECOMMENDATION

STATE OF NEW YORK, CHAUTAUQUA COUNTY,                     18-CV-01514S(F)
JOSEPH A. GERACE, LORI THIERFELDT,
ERIK BENTLEY, JOSEPH CALIMERI,
DAVE MISTRETTA, JEFFREY HOVER,
CHESTER COBB, JASON CRESANTI,
DEREK RAICHEL, and LATITIA JAMES,

                              Defendants.
_____

APPEARANCES:            DEAN J. SANDSTROM, *Pro se*
                        341 Wiltsie Road
                        Frewsburg, New York  14738

                        LETITIA A. JAMES
                        ATTORNEY GENERAL, STATE OF NEW YORK
                        Attorney for Defendants State of New York,
                          Cresanti, Raichel, and James
                        KIM S. MURPHY
                        Assistant Attorney General, of Counsel
                        Main Place Tower
                        Suite 300A
                        350 Main Street
                        Buffalo, New York  14202

                        WEBSTER SZANYI, LLP
                        Attorneys for Defendants Chautauqua, Gerace,
                          Thierfeldt, Bentley, Calimeri, Mistretta, Hover,
                          and Cobb
                        MICHAEL P. McCLAREN and
                        SHANNON BRAE O'NEILL, of Counsel
                        424 Main Street
                        Suite 1400
                        Buffalo, New York  14202

## JURISDICTION

On February 23, 2019, Hon. Lawrence J. Vilardo[1] referred this case to the undersigned for all pretrial matters including preparation of a report and recommendation on dispositive motions.  The matter is presently before the court on motions to dismiss filed by Defendants on March 26, 2019 (Dkt. 12), March 28, 2019 (Dkt. 15), April 8, 2019 (Dkt. 28), and April 12, 2019 (Dkt. 30).

## BACKGROUND

Plaintiff Dean J. Sandstrom ("Plaintiff"), proceeding *pro se*, commenced this civil rights action on December 28, 2018, seeking money damages, declaratory judgment, and injunctive relief under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, and 28 U.S.C. § 2201 and 2202.  Plaintiff alleges Defendants, acting in their official and individual capacities, employees of either New York State ("New York" or "State") or Chautauqua County ("the County"), as well as the State and the County, violated Plaintiff's rights under the First, Fourth, Fifth, and Fourteenth Amendments, in connection with a traffic stop and subsequent arrests on February 17, 2014, June 17, 2014, and June 10, 2015, with Plaintiff being convicted on November 10, 2015, of resisting arrest, obstructing governmental administration, and possession of marijuana.  Plaintiff asserts seven claims, including government compelled association in violation of the First Amendment, Amended Complaint, First Claim for Relief ("First Claim"), retaliation in violation of the First Amendment, *id.*, Second Claim for Relief ("Second Claim"), a stigma-plus claim in violation of the First Amendment, *id.*, Third Claim for Relief ("Third Claim"), unlawful

---

[1] On February 18, 2020, the matter was reassigned to Hon. John L. Sinatra.  Dkt. 40.

seizure in violation of the Fourth Amendment, excessive force in violation of the

Fourteenth Amendment, and intentional infliction of emotional distress, *id.*, Fourth Claim

for Relief ("Fourth Claim"), due process and equal protection claims under the Fifth,

Sixth, and Fourteenth Amendments, *id.*, Fifth Claim for Relief ("Fifth Claim"), abuse of

process in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments, *id.*, Sixth

Claim for Relief ("Sixth Claim"), and deliberately indifferent policies, practices, customs,

training and supervision in violation of the First, Fourth, and Fourteenth Amendments,

*id.*, Seventh Claim for Relief ("Seventh Claim").  Defendants include Chautauqua

County, Chautauqua County Sheriff Joseph A. Gerace ("Gerace"), Assistant

Chautauqua County District Attorneys ("A.D.A.s") Erik Bentley ("Bentley"), and Joseph

Calimeri ("Calimeri"), Chautauqua County Deputy Sheriffs Dave Mistretta ("Mistretta"),

Jeffrey Hover ("Hover"), and Chester Cobb ("Cobb"), and Town of Kiantone Judge Lori

Thierfeldt ("Judge Thierfeldt") (together, "County Defendants"), as well as New York

Attorney General Letitia A. James ("A.G. James"),[2] and New York State Troopers Jason

Cresanti ("Cresanti"), and Derek Raichel ("Raichel") (together, "State Defendants").  An

Amended Complaint filed February 21, 2019 (Dkt. 9) ("Amended Complaint"),

discontinued the action as against New York.

On March 26, 2019, Defendant Cresanti moved to dismiss the Amended

Complaint for lack of subject matter jurisdiction and as barred by the statute of

limitations (Dkt. 12) ("Cresanti Motion"), attaching Defendant Jason Cresanti's

Memorandum of Law in Support of Motion to Dismiss (Dkt. 12-1) ("Cresanti's

Memorandum").  On March 28, 2019, County Defendants moved to dismiss the

---

[2] The Court notes A.G. James, who assumed office on January 1, 2019, was not serving as New York Attorney General when the actions giving rise to this lawsuit occurred.

Amended Complaint for failure to state a claim (Dkt. 15) ("County Defendants' Motion"),

attaching the Declaration of Shannon B. O'Neill, Esq. (Dkt. 15-1) ("O'Neill Declaration"),

with exhibits A through E (Dkts. 15-2 through 15-6) ("O'Neill Declaration Exh(s). __"),

and the Memorandum of Law in Support of Defendants Chautauqua County, Sheriff

Gerace, Assistant District Attorney Erik Bentley, Assistant District Attorney Joseph

Calimeri, Deputy Dave Mistretta, Deputy Jeffrey Hover, Deputy Chester Cobb, and

Judge Theirfeldt's Motion to Dismiss (Dkt. 15-7) ("County Defendants' Memorandum").

On April 8, 2019, Defendant A.G. James moved to dismiss the Amended Complaint for

lack of subject matter jurisdiction and for failure to state a claim (Dkt. 28) ("A.G. James's

Motion"), attaching the Memorandum of Law in Support of Motion to Dismiss of Attorney

General Letitia James (Dkt. 28-1) ("A.G. James's Memorandum").  On April 12, 2019,

Defendant Raichel moved to dismiss the Amended Complaint for lack of personal

jurisdiction based on improper process and service of process, lack of subject matter

jurisdiction, and as barred by the statute of limitations (Dkt. 30) ("Raichel's Motion"),

attaching Defendants Derek Raichel's Memorandum of Law in Support of Motion to

Dismiss (Dkt. 30-1) ("Raichel's Memorandum"), and Defendant Raichel's Declaration in

Support of Motion to Dismiss the Amended Complaint (Dkt. 30-2) ("Raichel's

Declaration"), attaching exhibit A ("Raichel's Exh. A").

On May 5, 2019, Plaintiff filed Plaintiff's Response in Opposition to County

Defendants' Motion to Dismiss (Dkt. 32) ("Plaintiff's Response to County Defendants"),

attaching exhibit 1 ("Plaintiff's Exh. 1"), and Plaintiff's Response in Opposition to State

Defendants' Motion to Dismiss (Dkt. 33) ("Plaintiff's Response to State Defendants").

On May 15, 2019, State Defendants filed The State Defendants' Reply Memorandum of

Law in Further Support of Motions to Dismiss (Dkt. 36) ("State Defendants' Reply").  On May 31, 2019, County Defendants filed the Reply Memorandum of Law in Support Motion to Dismiss by Defendants Chautauqua County, Sheriff Gerace, Assistant District Attorney Erik Bentley, Assistant District Attorney Joseph Calimeri, Deputy Dave Mistretta, Deputy Jeffrey Hover, Deputy Chester Cobb, and Judge Thierfeldt (Dkt. 39) ("County Defendants' Reply").  Oral argument was deemed unnecessary.

Based on the following, Cresanti's Motion should be GRANTED; County Defendants' Motion should be GRANTED in part and DENIED in part; A.G. James's Motion should be GRANTED; and Raichel's Motion should be GRANTED.

## FACTS[3]

On February 17, 2014, at 2:00 P.M., Plaintiff Dean J. Sandstrom ("Plaintiff" or "Sandstrom"), a resident of Connecticut, was driving a vehicle ("the vehicle") on a highway in the Town of Kiantone, Chautauqua County, New York.  Traveling as a passenger in the vehicle was one Dawn Woodward ("Woodward"), in whose name the vehicle was registered.  Defendant Chautauqua County Deputy Sheriff Chester Cobb ("Cobb"), traveling in his patrol vehicle on the same highway, upon observing the New York inspection sticker on the vehicle was expired, operated the patrol vehicle's overhead emergency lights and pulled Plaintiff over ("first traffic stop").[4]  In response to Cobb's questioning, Plaintiff stated the vehicle was not registered to him, nor was Plaintiff a New York resident, asserting Plaintiff was thus exempt from civil jurisdiction in

---

[3] Taken from the pleadings and motion papers filed in this action.
[4] Plaintiff admits that both the inspection and registration stickers were properly affixed to the windshield of the vehicle which was registered in New York, as required under N.Y. Veh. & Traf. Law § 306(b) (requiring valid inspection sticker be affixed to vehicle's window), and § 401[4] (requiring valid registration sticker be affixed to vehicle's window).

New York.  Plaintiff then asked Cobb if Plaintiff was free to go, but Cobb responded that Plaintiff was being detained and asked Plaintiff for his driver's license.  Plaintiff replied that under the Fifth Amendment he was not required to produce identification, advising Cobb "has had ample time to collect the information required" to report the expired inspection sticker to the Commissioner of Motor Vehicles, and again asked if Plaintiff was free to go.  Amended Complaint ¶ 24.  Cobb responded Plaintiff was not free to leave stating, "I will be right back."  *Id.*  After several minutes, Defendant Chautauqua County Deputy Sheriff Jeffrey Hover ("Hover"), arrived, approached the vehicle and asked Plaintiff for his driver's license which Plaintiff refused to produce asserting he was neither a New York resident nor the vehicle's registered owner.  Using a louder voice, Hover repeated his demand that Plaintiff produce his driver's license, threatening that if Plaintiff did not do so, "he, and other Deputies, would 'Drag you out of the vehicle, take you to jail in handcuffs and have you fingerprinted.'"  *Id.* ¶ 26.  Plaintiff, believing he was about to be subjected to physical force and under duress, opened his wallet intending to show Hover some identification, but Hover reached into the vehicle, grabbed Plaintiff's arm with one hand and seized Plaintiff's wallet with the other, searched the wallet and returned it to Plaintiff with instructions to continue to wait.  Plaintiff was outraged at Hover's conduct, asked for a supervisor, and Hover agreed to call for a supervisor.  Several more minutes elapsed before Defendant Chautauqua County Deputy Sheriff Dave Mistretta ("Mistretta"), arrived and spoke with Cobb and Hover and then with Plaintiff who complained of the alleged unconstitutional search and seizure, Hover's threatening conduct, and the long amount of time the traffic stop was taking.  Mistretta responded that Cobb and Hover were "just doing their job," and departed the scene.

Amended Complaint ¶ 28.  Several minutes later, Hover approached the vehicle stating

he smelled marijuana and that both Plaintiff and Woodward were being detained until a

K-9 unit arrived.  Plaintiff maintains Mistretta instructed Hover to delay Plaintiff to permit

a K-9 unit to search the vehicle.  *Id.* ¶ 29.  Ten to fifteen minutes passed before

Defendant New York State Trooper Jason Cresanti ("Cresanti"), approached the vehicle

ordering Plaintiff and Woodward to exit the vehicle and Plaintiff and Woodward, fearing

the use of force, complied.  Hover inquired whether Plaintiff and Woodward were

"sovereign citizens," both denied the characterization maintaining they were not familiar

with the term but merely exercising their constitutionally protected rights.  Hover then

stated there was an outstanding South Carolina warrant against Plaintiff for marijuana

production.  *Id.* ¶ 31.  Plaintiff maintains Mistretta, Hover, and Cobb obtained

information electronically from New York State Intelligence Center ("NSCIC") to

fabricate probable cause to search the vehicle.  *Id.* ¶¶ 31, 44.  The search of the vehicle

revealed 2 grams of marijuana under the passenger seat before Plaintiff and Woodward

were permitted to re-enter the vehicle and Cobb issued two traffic citations ("traffic

citations"), for the expired inspection sticker and an expired operator license, to Plaintiff,

as well as an appearance ticket ("appearance ticket") for unlawful possession of

marijuana (together, "the February 17, 2014 charges").  In total, the first traffic stop took

two hours.

Following the first traffic stop, the statement that Plaintiff and Woodward are

sovereign citizens was repeated by Cobb, Hover, and Cresanti to numerous members

of the Chautauqua County Sheriff's Office ("Sheriff's Officer"), the New York State

Police ("State Police"), and the Federal Bureau of Investigation ("FBI"), as well as to

members of the local community, despite Plaintiff's service in the United States Army.

On February 18, 2014, Plaintiff wrote to the Secretary of the State of New York

concerning Cresanti and requesting assistance,[5] but received no response, causing

Plaintiff to believe Cresanti was acting pursuant to some agreement with the State to

violate Plaintiff's Constitutional rights.  Amended Complaint ¶ 38.  On February 19,

2014, Plaintiff sent by certified mail the two traffic citations and the appearance ticket to

the Town of Kiantone Court ("Town Court"), returning the documents because Plaintiff

believed that because he was neither a resident of nor domiciled in New York, Plaintiff

was barred from accepting service of process or entering a plea and Defendant Town

Court Judge Lori Thierfeldt ("Judge Thierfeldt") lacked jurisdiction over the matter.  *Id*.

¶¶ 40-42.  Judge Thierfeldt subsequently issued a summons for Plaintiff for the traffic

citations.  On March 4, 2014, Plaintiff spoke to Town Court clerk Joan Santoro

("Santoro"), who queried whether Plaintiff knew other individuals designated by the

Sheriff's Officer, State Police, and NYSIC, as sovereign citizens and investigated by the

FBI as domestic terrorists.  *Id*. ¶ 44.  On April 8, 2014, Plaintiff notified Judge Thierfeldt

and Defendant Chautauqua County Assistant District Attorney ("A.D.A.") Joseph

Calimeri ("Calameri") that Plaintiff considered the attempt to exercise jurisdiction over

him unconstitutional.  Plaintiff repeated his challenge to the Town Court's jurisdiction by

special appearance before the Town Court on May 13, 2014, and on June 10, 2014,

Plaintiff provided to the Town Court further notice regarding Plaintiff's asserted

---

[5] The record does not indicate Plaintiff's precise concerns about Cresanti and assistance requested from the New York State Secretary of State.

jurisdictional deficiencies.  On June 10, 2014, Judge Thierfeldt issued a bench warrant for Plaintiff's arrest on the February 17, 2014 charges ("first arrest warrant").[6]

On June 17, 2014, Plaintiff was traveling in Kiantone, New York in a vehicle owned and operated by Woodward,[7] when their travel was halted by law enforcement officers with the State Police and Sheriff's Office with their passage blocked to the front and left side by two State Police SUVs and to the rear by several Sheriff's Office vehicles ("second traffic stop").  Defendant State Trooper Derek Raichel ("Raichel") exited the SUV blocking the front of Plaintiff's vehicle and ran toward the vehicle which was quickly surrounded by other law enforcement officers.  Raichel, upon reaching the vehicle's passenger side, announced there was a warrant for Plaintiff's arrest, referring to the first arrest warrant, and requested Plaintiff exit the vehicle, but Plaintiff, rather than complying, rolled down his window to ask Raichel about the warrant.  Raichel responded by smashing the partially lowered window, reaching into the vehicle and unlocking the door, and forcefully removing Plaintiff after which several other law enforcement officers, including Hover, forced Plaintiff to the pavement and handcuffed him.  Plaintiff was then charged with obstructing governmental administration, resisting arrest, and unlawful possession of marijuana ("the June 17, 2014 charges").  Both Plaintiff and Woodward were transported to Kiantone Town Court.  Plaintiff was then committed to Chautauqua County Jail pending release on bail, and Woodward was released on her own recognizance.

---

[6] O'Neill Declaration Exh. C (Dkt. 15-4).
[7] Nothing in the record indicates the vehicle involved in the second traffic stop was not the same vehicle involved in the first traffic stop.  Because whether this is the fact is irrelevant to resolution of the matter, the court, for the sake of clarity, assumes it to be such.

On February 23, 2015, Plaintiff again failed to appear in Kiantone Town Court as Plaintiff had been directed by the court in connection with the February 17, 2014 charges pending from the first traffic stop.  Judge Thierfeldt issued a bench warrant to the New York State Police for Plaintiff's arrest.  O'Neill Declaration Exh. D (Dkt. 15-5) ("second arrest warrant").

On June 10, 2015, Plaintiff and Woodward were traveling in Chautauqua County to Buffalo when Hover pulled over the vehicle and arrested Plaintiff allegedly without probable cause ("third traffic stop").  Plaintiff maintains Hover refused to bring Plaintiff to the nearest town court, instead driving Plaintiff back to Kiantone Town Court to appear before Judge Thierfeldt who ordered Plaintiff be incarcerated.  Hover proceeded to transport Plaintiff to the Chautauqua County Jail ("the County Jail"), but, while en route, a deer crossed into the path of Hover's patrol vehicle, causing Hover to forcefully apply the brakes, although not in time to avoid an impact with the deer.  Plaintiff, who was handcuffed and not restrained by a seat belt, slammed into the dividing wall separating the patrol vehicle's front and back seats, injuring his back.  An unidentified Chautauqua County Deputy Sheriff who witnessed the accident approached Hover's patrol vehicle and offered to remove the deer from the road to allow Hover to proceed transporting Plaintiff to the County Jail.  Plaintiff maintains that while being held at the County Jail, he observed a young man being escorted into the adjacent holding cell while a Corrections Officer loudly announced the arrest of "another one of those sovereign citizens . . . ."  Amended Complaint ¶ 63.

On June 12, 2015, Plaintiff commenced in this court a separate action, *Joseph v. State of New York*, 15-CV-00519A ("prior action"),[8] against the State of New York, County of Chautauqua, and Town of Kiantone Court, asserting claims arising from the first traffic stop and the February 17, 2014 charges.  In a Decision and Order filed July 7, 2015, the prior action was dismissed with prejudice for lack of subject matter jurisdiction.  July 7, 2015 Decision and Order, 15-CV-00519A, Dkt. 2.  No appeal of this Decision and Order was taken by Plaintiff.

Following a jury trial[9] in Kiantone Town Court on the June 17, 2014 charges assessed in connection with the second traffic stop, Plaintiff was convicted on November 10, 2015, of the three charges stemming from the second traffic stop, including resisting arrest, obstructing government administration and possession of marijuana ("the conviction").  *See* Certificate of Disposition, O'Neill Declaration Exh. E (Dkt. 15-6).  Judge Thierfeldt presided over the trial.  In the instant action, Plaintiff maintains Hover, Cresanti, and Raichel fabricated evidence on which Defendant Chautauqua County A.D.A. Erik Bentley ("Bentley") relied in prosecuting Plaintiff, thereby depriving Plaintiff of his liberty and property between February 9, 2016 and May 31, 2016.[10]

## DISCUSSION

By four separate motions, Defendants move to dismiss the action pursuant to Fed.R.Civ.P. 12 ("Rule 12(b)") for lack of subject matter jurisdiction, lack of personal

---

[8] For unexplained reasons, in the prior action, Plaintiff denominated himself as "Dean Joseph" and did not include his surname "Sandstrom."

[9] The certificate of conviction does not indicate whether Plaintiff's trial on the June 17, 2014 charges was in front of a jury, but Plaintiff asserts it was a jury trial.  Amended Complaint ¶ 55.

[10] Although Plaintiff alleges that as a result of the conviction, "he suffered a deprivation of his liberty and property from February 9, 2016 until May 31, 2016," Amended Complaint ¶ 55, whether Plaintiff was incarcerated is not stated in the record.

jurisdiction, insufficient service of process, and for failure to state a claim upon which relief can be granted, as well as for being time-barred.  In particular, Defendant Cresanti moves to dismiss Plaintiff's official capacity claims against Cresanti pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction under the Eleventh Amendment, and the personal capacity claims pursuant to Rule 12(b)(6) as time-barred.  Defendant A.G. James moves to dismiss pursuant to Rule 12(b)(1) against A.G. James for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim.  Defendant Raichel moves to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(4) for insufficient process, Rule 12(b)(5) for insufficient service of process, and Rule 12(b)(6) for failure to state a claim against Raichel.  County Defendants move to dismiss all claims pursuant to Rule 12(b)(6) based on collateral estoppel, expiration of the applicable statutes of limitation, application of *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), various immunity doctrines, and for failure to state a claim.

Most of the Defendants make multiple, alternative arguments in support of dismissal.  Because the matter is before the undersigned for report and recommendation, each argument is addressed in the interest of completeness should the District Judge not agree with one or more recommendation.  Further, because a lack of jurisdiction renders all Plaintiff's claims moot, *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993) (holding district court erred in dismissing action on basis of expired statute of limitations without first addressing subject matter jurisdiction arguments because dismissal of complaint for

lack of such jurisdiction renders moot all claims and accompanying defenses and objections)), Defendants' jurisdictional contentions are addressed first.

1.    **Subject Matter Jurisdiction**

Each State Defendant moves to dismiss for lack of subject matter jurisdiction.  In particular, Defendants A.G. James, Cresanti, and Raichel argue that Eleventh Amendment immunity bars subject matter jurisdiction over lawsuits based on constitutional violations asserted against individuals acting in their official capacity as state officers.  A.G. James's Memorandum at 4-6; Cresanti's Memorandum at 5-8; Raichel's Memorandum at 6-8.  County Defendants likewise assert Eleventh Amendment immunity as depriving the court of subject matter jurisdiction over Plaintiff's claims against them.  County Defendants' Memorandum at 29-30.  Plaintiff argues in opposition that State Defendants, acting in concert with non-state actors, produced an ongoing state-created violation of Plaintiff's constitutionally protected rights, Plaintiff's Response to State Defendants at 3, and maintains Plaintiff seeks prospective, rather then retrospective, injunctive relief against State Defendants, *id.* at 4, such that the Eleventh Amendment immunity exception pursuant to *Ex parte Young*, 209 U.S. 123, 150-59 (1908) *("Ex parte Young* exception") applies.  *Id.* at 3-4.  With regard to County Defendants, Plaintiff asserts only that the Eleventh Amendment immunity does not bar § 1983 claims against Defendants in their individual capacity.  Plaintiff's Response to County Defendants at 10.  In further support of dismissal for lack of subject matter jurisdiction, State Defendants reassert that insofar as State Defendants were acting in their official capacity, they are barred from liability under the Eleventh Amendment, regardless of whether the relief sought is legal or equitable, State Defendants' Reply at

3-4; and no allegations in the Amended Complaint support application of *Ex parte Young*. *Id.* County Defendants reply that Plaintiff does not dispute that Eleventh Amendment immunity bars Plaintiff's claims against County Defendants in their official capacity. County Defendants' Reply at 13.

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gallomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). The *Ex parte Young* exception to Eleventh Amendment immunity permits claims for prospective relief, not damages, against state officials in their official capacities to proceed in federal court. Although New York waives immunity from liability and consents to suit if a claimant brings suit in the State Court of Claims, New York does not likewise waive immunity from liability for suits in federal court. *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Nor has Congress abrogated state immunity for suits brought under § 1983 and § 1985. *Chris H. v. New York*, 740 Fed.Appx. 740, 741 (2d Cir. 2018) (citing *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990) (§ 1983), and *Fincher v. State of Fla. Dep't of Labor and Emp't Sec. Unemployment Appeals Comm'n*, 798 F.2d 1371, 1372 (11th Cir. 1986) (§ 1985)).

With regard to County Defendants, local municipalities such as Erie County do not enjoy Eleventh Amendment immunity unless acting as agents of New York. *See Ortiz v. Case*, 2019 WL 1236413, at * 6 (W.D.N.Y. Mar. 18, 2019). As such, Eleventh Amendment immunity extends to a district attorney in connection with the prosecution of a criminal matter, but not insofar as what is challenged is the policies and customs of

the district attorney's officer.  *Id.* at * 7 (holding county district attorneys, in deciding to prosecute the plaintiff on criminal charges despite the plaintiff's claim the relevant evidence against him was weak, acted as state agents and immune from liability under the Eleventh Amendment).  Similarly, Eleventh Amendment immunity extends to the Defendant Sheriff and Sheriff Deputies who Plaintiff is suing for enforcing New York law, *see Huminske v. Corsones*, 396 F.3d 53, 71 (2d Cir. 2005) ("For a law-enforcement official, the most important factor in making this determination [as to whether Eleventh Amendment immunity applies to a sheriff] is whether he or she has the authority to investigate and enforce the state's criminal law") (citing *McMillian v. Monroe County*, 520 U.S. 781, 790 (1997)); as well as to Judge Thierfeldt acting to enforce state laws in Kiantone Town Court.  *See Yevstifeev v. State*, 860 F.Supp.2d 217, 224 (W.D.N.Y. 2012) (holding plaintiff's § 1983 claims against town court barred by Eleventh Amendment immunity).  Accordingly, insofar as Plaintiff's claims against County Defendants pertain to the enforcement of New York laws, the claims asserted against County Defendants are barred by Eleventh Amendment immunity.

Further, the action is barred by Eleventh Amendment immunity as against all Defendants with regard to Plaintiff's requests for retrospective relief, regardless of whether, as Plaintiff argues, Plaintiff's Response to State Defendants at 3, State Defendants conspired with others to violate Plaintiff's constitutional rights.  *See Robinson v. Allstate*, 584 F.Supp.2d 617, 620 (W.D.N.Y. 2008) (holding plaintiff's § 1983 claims against state defendants, including claims state defendants conspired with others to violate the plaintiff's constitutional rights, were barred by Eleventh Amendment immunity).  Nor is there any factual basis on which to apply the *Ex parte Young*

exception; rather, Plaintiff fails to make any allegations supporting his assertion he seeks prospective, injunctive relief, Plaintiff's Response to State Defendants at 4, and also fails to specify the prospective, injunctive relief he seeks.  Plaintiff thus has failed to allege any basis supporting the *Ex parte Young* exception and, accordingly, Defendants are immune from this action under the Eleventh Amendment, rendering the court without jurisdiction over such claims.  *See Atl. Healthcare Benefits Tr. v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) (raising Eleventh Amendment immunity *sua sponte* and because the court lacks jurisdiction to adjudicate a claim against an immune defendant).

The motions of State Defendants and County Defendants to dismiss based on lack of subject matter jurisdiction should be GRANTED based on Eleventh Amendment Immunity.

**2.    Service and Sufficiency of Process**

Defendant Raichel moves to dismiss for insufficient process and insufficient service of process based on Plaintiff's failure to serve Raichel with the Amended, and thus operative, Complaint.  Raichel's Memorandum at 4-5.  In opposition, Plaintiff argues that Raichel was timely served with a summons and copy of the original Complaint, and on March 26, 2019, Plaintiff served Raichel with summons and a copy of the Amended Complaint.  Plaintiff's Response to State Defendants at 4-5.  In further support of dismissal, Raichel argues that after the Amended Complaint was filed on February 21, 2019, Plaintiff served Raichel with only the original Complaint and, thus, never obtained personal jurisdiction over Raichel, nor did Plaintiff ever establish good cause for the untimely service to avoid dismissal.  State Defendants' Reply at 1-3.

As relevant here, Fed. R. Civ. P. 4(m) ("Rule 4(m)") provides,

> If a defendant is not served within 90 days[11] after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

The subsequent filing of an amended complaint does not restart the 90-day clock in which to serve; rather, an amended complaint must be served within 90 days after the date the original complaint was filed.  *Jennis v. Rood*, 488 F.Supp.2d 172, 180 (N.D.N.Y. 2007) (citing cases), *aff'd in relevant part, vacating in part*, 310 Fed.Appx. 439 (2d Cir. 2009).  Rule 4(m) "is to be construed liberally to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986) (internal quotation marks and citation omitted).  Further, Fed. R. Civ. P. 4(j) ("Rule 4(j)"), permits the court to disregard a failure to properly serve within the allotted time if the plaintiff can show good cause for such failure.  *Id.* (citing Siegel, *Practice Commentary on Amendment of Federal Rule 4*, 96 F.R.D. 88, 101-02).

Because the instant action was commenced with the filing of the original Complaint on December 28, 2018, Plaintiff had until March 28, 2019, to serve Defendant Raichel.  The parties agree Raichel was served on March 25, 2019, Raichel Declaration ¶ 3; Plaintiff's Response to State Defendants at 2-3, when Raichel maintains he was served with a copy of the original Complaint whereas Plaintiff maintains that Raichel received a copy of the Amended Complaint.  Raichel Declaration

---

[11] Although State Defendants refer to the timeframe in which to serve under Rule 4(m) as "120 days after the complaint is filed," State Defendants' Reply at 2, on December 1, 2015, Rule 4(m) was amended to reduce the time in which to serve a complaint after filing from 120 days to 90 days.  Fed.R.Civ.P. 4(b) advisory committee's note to 2015 amendment.

¶ 4 and Exh. A; Plaintiff's Response to State Defendants at 3.  Raichel further admits he was advised by his legal counsel that on February 21, 2019, Plaintiff filed an Amended Complaint, yet insists that to date he has not been served with the Amended Complaint. Raichel Declaration ¶ 4.  As such, there is an issue of fact as to whether Plaintiff served Raichel with the Amended Complaint, which issue may not be resolved on the instant motion.  Nevertheless, the question is academic because even if service of the Amended Complaint has not been timely made, the court can either dismiss the action without prejudice and permit service to be made within a specific time, or extend the time for service where Plaintiff has shown good cause for the failure to timely serve. Here, because Plaintiff denies failing to timely serve on Raichel the Amended Complaint, there can be no factual basis on which Plaintiff can rely as establishing "good cause" for the delay, leaving the court with the option of dismissing the Amended Complaint as against Raichel instead of extending the period within which Plaintiff may serve it pursuant to Rule 4(j).

Although generally dismissal for insufficient service of process is without prejudice, Fed.R.Civ.P. 4(m), "'[w]here subsequent service of a complaint upon the defendant[s] would be futile, the Court need not dismiss the action against [those] defendant[s] without prejudice and may instead dismiss it with prejudice.'" *See Nesbeth v. New York City Management LLC*, 2019 WL 110953, at * 4 (S.D.N.Y. Jan. 4, 2019) (brackets in original) (quoting *Ferrer v. Superintendent Orange County Jail*, 2010 WL 306977, at *3 (S.D.N.Y. Jan. 26, 2010)).  Here, the claims asserted in the Amended Complaint against Raichel are subject to dismissal for lack of subject matter jurisdiction, Discussion, *supra*, at 13-16, as well as on the merits for failure to state a claim.

Discussion, *infra*, at 30-54.  Accordingly, Raichel's Motion should be GRANTED insofar as Raichel seeks dismissal of the Amended Complaint for insufficient service of process, and the Amended Complaint should be DISMISSED with prejudice.

### 3.    Failure to State a Claim

Each Defendant moves to dismiss for failure to state a claim.  To survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a claim to relief that is plausible on its face").  The complaint's factual allegations "must be enough to raise above the speculative level on the assumption that all the allegations in the complaint are true."  *Twombly*, 550 U.S. at 556.  *See Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (reviewing motion to dismiss under 12(b)(6), "accepting as true the factual allegations in the complaint and drawing all references in the plaintiff's favor").

The "plausibility standard" applicable to a Rule 12(b)(6) motion to dismiss "is guided by '[t]wo working principles.'"  *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citing *Twombly*, 550 U.S. at 544 (2007), and quoting *Iqbal*, 556 U.S. at 678).  "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice.'" *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678).  "'Second, only a complaint that

states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining

whether a complaint states a plausible claim for relief will ... be a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense."

*Id.* (quoting *Iqbal*, 556 U.S. at 679).  Unless the plaintiff pleads "enough facts to state a

claim that is plausible on its face" so as to "nudge[ ] their claims across the line from

conceivable to plausible, [the] complaint must be dismissed."  *Twombly,* 550 U.S. at

570.

> ### A.    Time-Barred Claims

State Defendants Cresanti and Raichel, and County Defendants argue in support

of dismissal under Rule 12(b)(6) that the various claims asserted against them are time-

barred by the three-year statute of limitations applicable to § 1983 and § 1985 claims.

Cresanti's Memorandum at 8-11; Raichel's Memorandum at 9-11; County Defendants'

Memorandum at 7-8.  County Defendants further assert that insofar as any claims are

asserted pursuant to New York law, they are also time-barred, and Plaintiff never filed

the requisite Notice of Claim before commencing an action against a municipality.

County Defendants' Memorandum at 9.  In opposition, Plaintiff argues his claims

against State Defendants Cresanti and Raichel did not accrue until March 15, 2017,

when Woodward withdrew a related action, *Woodward v. Chautauqua County*, 15-CV-

246A (W.D.N.Y.) ("*Woodward* action"), and Plaintiff was given access to discovery

documents in the *Woodward* action.  Plaintiff's Response to State Defendants at 3.

Plaintiff further maintains the Amended Complaint alleges a series of separate acts

collectively constituting a continuing violation for which the limitations period has not

run.  Plaintiff's Response to County Defendants at 3.  In further support of dismissal,

State Defendants argue Plaintiff cannot avoid the limitations period by relying on the

date he reviewed discovery materials in the Woodward action and ignoring the relevant

dates of the traffic stops on which the instant action is predicated.  State Defendants'

Reply at 5-6.  County Defendants argue Plaintiff references no facts in support of his

assertion that the continuing violation doctrine applies, or supporting that Plaintiff

interacted with any of the Defendants, in a matter supportive of Plaintiff's claims, on the

later dates referenced in the Amended Complaint.  County Defendants' Reply at 1-2

(referencing Amended Complaint ¶¶ 55 and 133).  In this case, Plaintiff cannot avoid

dismissal of all claims as time-barred.

Specifically, § 1983 actions arising in New York are subject to New York's

general three-year statute of limitations for torts, N.Y. C.P.L.R. § 214 (McKinney 2019)

("§ 214").  *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citing *Pearl v. City of

Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002), and N.Y. C.P.L.R. § 214 (McKinney

2013)).  In the instant case, Plaintiff's claims are predicated on incidents occurring on

February 17, 2014) (first traffic stop), June 17, 2014 (second traffic stop), June 10, 2015

(third traffic stop), and November 10, 2015 (date of Plaintiff's conviction).  As such, the

statute of limitations for the latest such event expired on November 10, 2018, *i.e.*, three

years after the November 10, 2015 conviction.  Plaintiff, however, did not commence

this action until December 28, 2018.

Insofar as Plaintiff references later dates, including February 9, 2016, and May

31, 2016 (Amended Complaint ¶¶ 55 and 133), Plaintiff does not allege how he

maintains he was deprived of any rights on or in connection with any of those dates by any Defendant. Even assuming, *arguendo*, such dates refer to some period of incarceration or home confinement or probation imposed as a result of Plaintiff's November 10, 2015 conviction, which Plaintiff does not allege and the record does not support, Plaintiff could not rely on such effects to establish a continuing violation in order to avoid dismissal based on the three-year statute of limitations. In particular, "[t]he continuing violation doctrine, where applicable, provides an exception to the normal knew-or-should-have-known accrual date.'" *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)). "It applies to claims 'composed of a series of separate acts that collectively constitute one unlawful [ ] practice.'" *Id.* (quoting *Washington v. County of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (brackets in original) (further internal quotation omitted)). "The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a 'serial violation[ ],' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002)). Even with application of the continuing violation doctrine, however, a claim will be timely "only if the plaintiff 'alleges . . . some non-time-barred acts' contributing to the alleged violation." *Id.* (quoting *Harris*, 186 F.3d at 250) (brackets omitted). Although the continuing violation doctrine typically arises in the context of an employment discrimination claim, its application is not limited to that context, and has been applied to § 1983 claims, *id.* (citing *Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009)), as well as to civil rights claims asserted pursuant to *Bivens v. Six Unknown Named*

*Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens* action").  *Id.* at 221-23.  Nevertheless, in *Gonzalez*, albeit in the context of a *Bivens* action, the Second Circuit held that the continuing violation doctrine did not apply to First and Fifth Amendment claims that were based on the defendants' discrete acts, and which did not include the resulting period of the inmate plaintiff's confinement in SHU.  As such, Plaintiff's § 1983 claims were filed after the applicable statute of limitations had expired and, thus, are time-barred.

With regard to Plaintiff's § 1986 claims, the applicable statute of limitations is found in the statute itself, and provides that no action under § 1986 may be commenced more than one year after the cause of action has accrued.  42 U.S.C. § 1986 ("But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.").  Further, the statute of limitations begins to run upon conclusion of the underlying § 1985 conspiracy upon which a § 1986 claim is based.  *See Powers v. Karen*, 768 F.Supp. 46, 50 (E.D.N.Y. 1991) (holding taxpayer's action against United States for alleged neglect to prevent violation of civil rights based on Internal Revenue Service officer's attempt to collect past-due taxes accrued for purposes of § 1986 one-year limitation period on date the officer filed the notice of levy to obtain the taxpayer's life insurance policy cash value).  Here, even if Plaintiff could establish a conspiracy between any of Defendants, such conspiracy would have been complete as of his November 10, 2015 conviction, rendering the filing of the action on December 28, 2018 untimely for purposes of § 1986.

Although Plaintiff does not specifically allege that any of his claims is asserted under New York law, Plaintiff does assert that "this Court has supplemental jurisdiction

over plaintiff's causes of action arising under New York State law."  Amended Complaint ¶ 3.  In light of Plaintiff's *pro se* status, and the liberal construction standard for pleadings by such plaintiffs set forth in *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Plaintiff's Amended Complaint is construed as asserting claims pursuant to New York common law.

As County Defendants argue,[12] County Defendants' Memorandum at 9, Plaintiff's putative state law claims for assault, battery, false imprisonment, malicious prosecution, libel, slander, false words causing special damages, or a violation of the right of privacy asserted against, as relevant here, a county, Assistant District Attorneys, a county sheriff, and deputy sheriffs, are subject to a one-year limitations period.  N.Y. C.P.L.R. § 215[3].  False arrest and false imprisonment claims accrue upon the plaintiff's release from custody. *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) ("Under New York law, a claim for [false arrest] accrues . . . at the time when plaintiff is released from jail").  Whether Plaintiff was incarcerated on any of the charges is not in the record, let alone any release date.  A malicious prosecution claim accrues upon the termination of the underlying proceedings, here, November 10, 2015, the date of Plaintiff's conviction.[13]  *10 Ellicott Square Court Corp. v. Violet Realty, Inc.*, 916 N.Y.S.2d 705, 707-08 (4th Dep't 2011).  Similarly, the one-year limitations period applies to an abuse of process claim which also may be commenced with a determination favorable to the plaintiff.  *Id.*  Insofar as the Amended Complaint can be construed as asserting negligence claims against a municipality, including a county or county officer, the limitations period is one year and 90 days.  N.Y. Gen. Mun. Law § 50-i(1)(c).  Plaintiff's

---

[12] The court notes State Defendants have not moved to dismiss any state law claims as time-barred.
[13] The record does not indicate whether Plaintiff ever appealed the conviction.

filing of this action on December 28, 2018, was well beyond the expiration of these limitations periods, *i.e.*, November 10, 2016 for the one-year limitations period, and February 8, 2017 for the one-year and 90 days limitations period.[14]

Defendants' motions should be GRANTED on the basis Plaintiff's claims are time-barred.

### B.    Claims Asserted Under 42 U.S.C. §§ 1985, 1986, 1987, and 1988

The Amended Complaint contains numerous references to Plaintiff's claims against all Defendants being pursuant to 42 U.S.C. §§ 1985 (" § 1985"), 1986 ("§ 1986"), 1987 ("§ 1987"), and 1988 ("§ 1988").  *See*, *e.g.*, Amended Complaint ¶ 1 (asserting Plaintiff seeks relief pursuant to, *inter alia*, 42 U.S.C. §§ 1983, 1985, 1986, and 1988); ¶ 3 (alleging Plaintiff's claims arise under, *inter alia*, 42 U.S.C. §§ 1983, 1985, 1986, and 1988); First Claim for Relief (asserting violations of Plaintiff's First Amendment right against government compelled association under 42 U.S.C. §§ 1985, 1986, 1987, and 1988).  County Defendants seeks dismissal of these claims because the referenced statutes are irrelevant and therefore inapplicable to Plaintiff's claims.[15] County Defendants' Memorandum at 10-12.  State Defendants Cresanti and Raichel assert similar arguments only with regard to § 1987 and § 1988.  Cresanti's Memorandum at 2-3 & n. 3; Raichel's Memorandum at 2 & n. 2.  In opposition, Plaintiff concedes the alleged claim under § 1987 is in error, Plaintiff's Response to County Defendants at 4, yet maintains he has sufficiently alleged facts supporting claims under

---

[14] The court notes Plaintiff does not allege he complied with the notice of claim requirements set forth in N.Y. Gen.Mun.Law § 50-e (McKinney 2019), a prerequisite to Plaintiff's state law claims against municipalities and their officers.  N.Y. County Law § 52[1] (McKinney 2019).

[15] Although State Defendants Cresanti and Raichel observe Plaintiff refers in the Amended Complaint to 42 U.S.C. §§ 1985 and 1986, Cresanti's Memorandum at 2-3; Raichel's Memorandum at 2, they do not argue such statutes are inapplicable to Plaintiff's claims.

§ 1985, § 1986, and § 1988. *Id.* at 3-4. In further support of dismissal County Defendants reiterate that Plaintiff's § 1985 and § 1986 claims fail as a matter of law. County Defendants' Reply at 8-9.[16] Plaintiff's claims based on violation of § 1985, § 1986, § 1987 and § 1988 should be DISMISSED pursuant to Rule 12(b)(6) for failure to state a claim for the following reasons.

Plaintiff maintains he is asserting a conspiracy claim pursuant to § 1985(3), the elements of which include, (1) a conspiracy, (2) to deprive a person of the equal protection of the laws, or the equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) an injury to the plaintiff's person or property, or deprivation of a United States citizen's right or privilege." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citing *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586-87 (2d Cir. 1988)). "A conspiracy 'need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct.'" *Id.* (quoting *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995) (further internal quotation omitted). "Furthermore, the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)). Significantly, the Amended Complaint is devoid of any allegation of any "tacit understanding" between any of the Defendants to carry out any prohibited conduct. *See Maier v. Phillips*, 205 F.3d 1323, 1323 (2d Cir. 2000) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to

---

[16] State Defendants' Reply does not further address this point.

deprive a person of constitutional rights cannot withstand a motion to dismiss."). Moreover, the Amended Complaint does not allege that any conspiracy perceived by Plaintiff was motivated by any class-based discriminatory animus. *See Thomas*, 165 F.3d at 147 (affirming district court's grant of summary judgment on plaintiff's conspiracy claim where the plaintiff alleged no facts and presented no evidence that could be interpreted as establishing an agreement among the defendants to deprive the plaintiff of his constitutional right, nor demonstrating defendant law enforcement officers acted with class-based discriminatory animus). Accordingly, Plaintiff's § 1985 claim against Defendants should be DISMISSED under Rule 12(b)(6) for failure to state a claim.

With regard to Plaintiff's asserted § 1986 violation, "Section 1986 imposes liability on an individual who has knowledge of discrimination prohibited under § 1985. Hence, a § 1986 claim is contingent on a valid § 1985 claim." *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996) (citing *Mian*, 7 F.3d at 1088). Accordingly, because, as discussed, *supra*, Plaintiff does not have a valid § 1985 claim, Plaintiff also has no valid § 1986 claim. *Id.* Plaintiff's § 1986 claim should be DISMISSED under Rule 12(b)(6) for failure to state a claim.

In responding in opposition to the instant motions to dismiss, Plaintiff asserts he erroneously references § 1987 as the basis for his claims against Defendants Bentley and Calimeri. Plaintiff's Response to County Defendants at 4. Significantly, by its terms, § 1987 provides federal officials with discretion whether to prosecute with respect to certain crimes or in certain circumstances, but does not vest any state officer with such authority. *Inmates of Attica Correctional Facility v. Rockefeller*, 477 F.2d 375, 382 (2d Cir. 1973). Because Defendants Bentley and Calimeri are Chautauqua County

A.D.A.s, they do not qualify as federal officials such that § 1987 is inapplicable to this case. The Plaintiff's § 1987 claims against Defendants should thus be DISMISSED under Rule 12(b)(6) for failure to state a claim.

The only relief provided for under § 1988 is awards of attorney's fees (§ 1988(b)), and expert witness fees (§ 1988(c)), for a prevailing party in a civil rights action brought pursuant to § 1983. Because Plaintiff is neither an attorney nor an expert, Plaintiff cannot recover under § 1988(b) or (c). *See Kay v. Ehrler*, 499 U.S. 432, 434-35 (1991) ("*Kay*") ("The Circuits are in agreement . . . on the proposition that a *pro se* litigant who is *not* a lawyer is *not* entitled to attorney's fees [under § 1988]" (italics in original)); *Pietrangelo v. U.S. Army*, 568 F.3d 341, 343-44 (2d Cir. 2009) ("courts of appeals have since *Kay* denied attorney's fees to *pro se* attorneys under a variety of fee-shifting statutes . . .." (internal quotation marks, brackets, and citations omitted). Furthermore, § 1988(a), on which Plaintiff relies in asserting his § 1988 claim, Plaintiff's Response to County Attorneys at 4, is procedural in nature, and does not provide for a private cause of action. *Reeves v. American Optical Co.*, 408 F.Supp. 297, 302 (W.D.N.Y. 1976). Plaintiff's § 1988 claims should be DISMISSED under Rule 12(b)(6) for failure to state a claim.

### C.    42 U.S.C. § 1983

As stated, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 ("§ 1983"), which permits imposing civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States. *Patterson v. County of Oneida, New York*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983). Section 1983, however, "'is not itself a source of

substantive rights.'" *Id.* (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred' . . . ." *Id.* To succeed on a § 1983 claim, a plaintiff must establish the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). Further, it is basic that liability under § 1983 requires a defendant's personal involvement in the alleged deprivation of a federal right. *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) ("To establish a section 1983 claim, 'a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity.'" (quoting *Patterson*, 375 F.3d at 229)).

The elements of a § 1983 claim include (1) the deprivation of a federal constitutional or statutory right, and (2) by a person acting under color of state law. *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 640 (1980)). Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, 443 U.S. at 140). In the instant case, Plaintiff alleges that he was subjected to compelled government association, retaliation, and defamatory conduct resulting in a "stigma-plus" claim, in violation of the First Amendment, unlawful seizure in violation of the Fourth Amendment, denial of due process in violation of the Fifth Amendment, and excessive force, and denial of due process and equal protection in violation of the Fourteenth Amendment.

### 1.    *Heck v. Humphrey*

County Defendants argue Plaintiff's November 10, 2015 conviction bars Plaintiff's collateral challenges insofar as a verdict in Plaintiff's favor on the instant claims would necessarily imply the invalidity of the conviction in contravention of the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) ("*Heck*").  County Defendants' Memorandum at 27-28.  Plaintiff argues in opposition that *Heck* does not bar any action where the "judgment is 'void ab initio due to the state court's lack of jurisdiction.'" Plaintiff's Response to County Defendants at 9 (quoting *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 528 (7th Cir. 2000)), and that *Heck* does not bar civil rights claims that would exist independent of the termination of the criminal proceedings, such as an excessive force claim.  *Id.* (citing cases).  In further support of dismissal, County Defendants maintain because Plaintiff's § 1983 and § 1985 claims related to the first traffic stop and, ultimately, to his November 10, 2015 conviction, Plaintiff's claims necessarily implicate the validity of that conviction, such that Plaintiff's claims are barred by *Heck* until and unless Plaintiff's conviction is reversed or vacated.  County Defendants' Reply at 3-4.

> In *Heck*, the Court adopted the rule that
>
> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, 512 U.S. at 487.

This principle is not limited to § 1983 claims, but also applies to claims asserted under §§ 1985(3) and 1986.  *Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999).  Accordingly,

each of Plaintiff's claims that turn on his November 10, 2015 conviction is necessarily barred by *Heck* until and unless such conviction is reversed.  The barred claims include those asserting conspiracy, unlawful search, and unlawful seizure.  *See Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999) (despite *Heck*'s bar of recovery for certain civil rights claims, "[v]ictims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy – including (where appropriate) damages for physical injury, property damage, [and] injury to reputation . . . ."); *Amaker*, 179 F.3d at 51-52 (plaintiff's claims turning on an asserted conspiracy to commit the crimes for which the plaintiff was convicted were barred by *Heck*).  Plaintiff thus is correct that certain civil rights claims can avoid a bar under *Heck*, such as a claim that excessive force was used to effect the arrest on criminal charges for which the plaintiff subsequently was tried and convicted, even without obtaining a reversal of the conviction.  Nevertheless, Plaintiff's claims that directly implicate the validity of his conviction, including the claims for for unlawful search and seizure, and malicious prosecution, are barred by *Heck*, and Defendants' Motions should be GRANTED as to such claims.

### 2.    Personal Involvement

Although A.G. James is named as a Defendant in the Amended Complaint's caption, Plaintiff makes no specific allegations against her.  In support of dismissal, A.G. James argues the Amended Complaint lacks any allegations against A.G. James such that she was not personally involved in any of the alleged civil rights violations, lacked any authority over the State Police and County Defendants and, as such, cannot be held liable.  Defendant A.G. James's Memorandum at 6-8.  Plaintiff maintains the

request for injunctive relief is viable against A.G. James. Plaintiff's Response to State

Defendants at 4. In further support of dismissal, Defendant A.G. James reiterates that

the Amended Complaint contains no allegations against her. State Defendants' Reply

at 2.

Personal involvement in the deprivation of a federal constitutional right is

required for liability under § 1983. *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d

246, 254 (2d Cir. 2001). *See McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)

("In this Circuit personal involvement of defendants in alleged constitutional deprivations

is a prerequisite to an award of damages under § 1983."). The Second Circuit

construes personal involvement in this context to mean "direct participation, or failure to

remedy the alleged wrong after learning of it, or creation of a policy or custom under

which unconstitutional practices occurred, or gross negligence in managing

subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Personal involvement

need not be active participation; it can be found "when an official has actual or

constructive notice of unconstitutional practices and demonstrates gross negligence or

deliberate indifference by failing to act." *Meriwether v. Coughlin*, 879 F.2d 1037, 1048

(2d Cir. 1989) (citing *McCann v. Coughlin*, 698 F.2d 112, 115 (2d Cir. 1983)). Thus,

> "Personal involvement" is not limited to direct participation by the supervisor in the challenged conduct, but may also be established by evidence of an official's (1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates.

*Hayut v. State Univ. of New York*, 352 F.3d 733, 753 (2d Cir. 2003).

Although it is settled that a plaintiff must establish the defendant was personally involved in the alleged deprivation to obtain relief under § 1983, *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016), the required personal involvement is not satisfied by establishing a link in the chain of command, *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); nor may a supervisory defendant be held liable on a § 1983 claim based on *respondeat superior*, absent any failure to intervene, failure to remedy a wrong, creating or permitting to continue a policy amounting to an unconstitutional violation, or grossly negligent supervision of subordinates, *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003), none of which is alleged here against Defendant A.G. James.

Nor does it appear Plaintiff could allege any personal involvement by Defendant A.G. James who assumed the office of Attorney General of New York on January 1, 2019, well after the incidents on which Plaintiff's claims are predicated occurred.[17] Furthermore, insofar as Plaintiff maintains he may seek prospective injunctive relief against Defendant A.G. James, Plaintiff's Response to State Defendants at 4, Plaintiff alleges no plausible basis for such relief, which is available only for ongoing violations of federal law, *see Ford v. Reynolds*, 316 F.3d 351, 355 (2d Cir. 2003) (injunctive relief sought by students for alleged violations of civil rights became moot upon graduating from university where alleged violations occurred), none of which is alleged here.[18]

Defendant A.G. James's motion to dismiss should be GRANTED on this point.

---

[17] In ruling on a motion to dismiss for failure to state a claim, the court may take judicial notice pursuant to Fed.R.Evid. 201. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). Such matters include "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably questioned." Fed.E.Evid. 201(b)(1) and (2).

[18] The court notes that as chief legal officer of New York State, *see* N.Y. Exec. Law §§ 60 and 63, Defendant A.G. James has no supervisory authority over any Defendant in this action.

### 3.    First Amendment

Plaintiff claims violations of his First Amendment rights against compelled

government association, retaliation for exercising Constitutional rights, and a "stigma-

plus" claim based on asserted damage to Plaintiff's reputation.

### a.    Compelled Government Association

Plaintiff makes a vague allegation that Defendants acted to deprive Plaintiff of his

First Amendment rights by "compel[ling] him into associations against his will . . . ."  First

Claim, Amended Complaint ¶ 78.  County Defendants maintain insofar as Plaintiff is

alleging Defendants imposed on Plaintiff the civil status of New York citizen and

resident, such claim is not a cognizable cause of action, County Defendants'

Memorandum at 12-13, noting that although Plaintiff denies he is a "sovereign citizen,"

Plaintiff's assertion that Defendants cannot exercise jurisdiction over him are "eerily

similar to sovereign citizen ideologies which Courts have unequivocally rejected."  *Id.* at

13 n. 11.  In opposition, Plaintiff argues that inasmuch as the First Amendment protects

the right to freely associate, its corollary protects the right not to associate.  Plaintiff's

Response to County Defendants at 4-5.  In further support of dismissal, County

Defendants reiterate that Plaintiff's assertions fail to state a cognizable claim for relief.

County Defendants' Reply at 5.

Preliminarily, the court puts aside any discussion of whether Plaintiff is a so-

called sovereign citizen[19] as irrelevant to Plaintiff's claim which the court construes as

alleging a violation of his First Amendment right not to have citizenship or residency in

---

[19] "The sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." *United States v. Ulloa*, 511 Fed.Appx. 105, 107 n. 1 (2d Cir. 2013).

New York State imposed on him.  Whether Plaintiff is a citizen or resident of New York

is irrelevant to whether or not Plaintiff, while operating a motor vehicle on the roadways

and highways within New York, and based on such operation, was subject to the New

York Vehicle and Traffic Laws, as well as New York Penal Law based on Plaintiff's

conduct.  Significantly, Plaintiff points to no law providing that a non-citizen or non-

resident is not subject to New York Vehicle and Traffic Laws while operating a motor

vehicle on a public roadway within New York.  Rather, New York law regarding the

inspection of motor vehicles applies, by its express terms, to any motor vehicle

registered in New York and used on public highways by any person – citizens,

residents, non-citizens, and non-residents alike.  N.Y. Veh. & Traf. Law §§ 300 and

301.[20]  For example, a non-resident who operates a motor vehicle within New York is

required to have a valid driver's license issued by the relevant state of residence.  N.Y.

Veh. & Traf. Law § 250[2].  New York residence is not a prerequisite for operation of a

vehicle in New York.  Nor does Plaintiff point to anything supporting his assertion that

his residency in Connecticut shielded Plaintiff from criminal charges for possession of

marijuana while in New York.  Indeed, the court's research reveals no caselaw

supporting these somewhat novel arguments.  Accordingly, County Defendants' Motion

should be GRANTED as to Plaintiff's First Amendment claim alleging he was subjected

to compelled association as a New York citizen or resident.

### b.    Retaliation

Plaintiff alleges "Defendants retaliated, penalized and discriminated against him

for exercising his right of freedom of association, religion and speech secured by the

---

[20] References to N.Y. Veh. & Traf. Law are to McKinney 2019.

First Amendment . . ..."  Amended Complaint, Second Claim ¶ 88.  The means by which

unspecified Defendants purportedly retaliated against Plaintiff include "assault, battery,

false imprisonment, abuse of process, excessive force, duress, fraud, denial of due

process and the equal protection of the law . . . ."  *Id.*  County Defendants argue Plaintiff

has failed to allege that any of his First Amendment rights were "actually chilled" by the

asserted retaliatory conduct.  County Defendants' Memorandum at 13-14.  In

opposition, Plaintiff maintains that following the second traffic stop on June 17, 2014, he

"discontinued his previous behavior of challenging governmental authority as a part [*sic*]

the exercise of constitutionally protected conduct."  Plaintiff's Response to County

Defendants at 5.  In further support of dismissal, County Defendants content that even if

Plaintiff's prior practice of challenging governmental authority is an interest protected by

the First Amendment, Plaintiff fails to allege the second traffic stop was motivated by

Plaintiff's exercise of First Amendment rights, and fails to assert the personal

involvement of any Defendants in chilling Plaintiff's putative First Amendment rights.

County Defendants' Reply at 7.

    "A plaintiff asserting a First Amendment retaliation claim must establish that: (1)

his speech or conduct was protected by the First Amendment, (2) the defendant took an

adverse action against him, and (3) there was a causal connection between this

adverse action and the protected speech."  *Matthews v. City of New York*, 779 F.3d

167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Central School District*, 654

F.3d 267, 272 (2d Cir. 2011)).  In the instant case, assuming, *arguendo*, Plaintiff's

previous practice of challenging governmental conduct, a practice to which Plaintiff does

not allude in the Amended Complaint, constituted speech or conduct protected by the

First Amendment, and further accepting as true Plaintiff's assertions regarding the adverse actions Defendants took against him, nothing in the Amended Complaint would support the third element requiring such adverse actions were motivated by Plaintiff's engaging in any protected activity; rather, the facts as alleged in the Amended Complaint support only that the first arrest warrant was the basis for the second traffic stop. Importantly, not only does Plaintiff's assertion that he was regularly engaged in the practice of challenging governmental conduct not appear in the Amended Complaint, but Plaintiff does not describe such challenging conduct, the government authorities to whom the conduct was directed, nor any basis to believe the Defendants involved with the second traffic stop were even aware of such conduct. Accordingly, the Amended Complaint fails to state a claim that Plaintiff's second traffic stop was intended to retaliate against Plaintiff for the exercise of his First Amendment rights and, as such, County Defendants' Motion should be GRANTED as to this claim.

### c.    Stigma Plus

For his Third Claim, Plaintiff asserts a "stigma plus" claim.[21] Amended Complaint, Third Claim ¶ 110-11. County Defendants maintain such claim is properly asserted under the Fourteenth, rather than the First, Amendment. County Defendants' Memorandum at 14-15. Plaintiff insists his stigma-plus claim is properly asserted under the First Amendment. Plaintiff's Response to County Defendants at 5-6. County Defendants do nor further address this claim under the First Amendment.

As County Defendants maintain, Plaintiff's stigma plus claim asserts a violation of the Fourteenth Amendment, not the First Amendment. Significantly, the cases on which

---

[21] The "stigma plus" doctrine provides, in limited circumstances, for a remedy for government defamation under federal constitutional laws. *Paul v. Davis*, 424 U.S. 693, 701-10 (1976).

Plaintiff relies in support of this claim, Plaintiff's Response to County Defendants at 5-6 refer to the claim as a violation of the Fourteenth Amendment. *See Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (referring to a stigma plus claim as requiring "a deprivation of a liberty or property interest protected by due process"); and *Velez v. Levy*, 401 F.3d 75, 87-88 (2d Cir. 2005) (addressing stigma plus claim as a Fourteenth Amendment due process deprivation). Accordingly, County Defendants' Motion should be GRANTED insofar as Plaintiff asserts a First Amendment stigma plus claim.

### 4.    Fourth Amendment

Plaintiff's Fourth Claim asserts as violations of the Fourth Amendment unlawful seizure, excessive force, and intentional infliction of emotional distress in connection with seizures of Plaintiff on February 17, 2014, June 14, 2014, June 10, 2015, and February 9, 2016. Amended Complaint, Fourth Claim ¶¶ 132-53.

### a.    Unlawful Seizure

Plaintiff alleges he was unlawfully seized in violation of the Fourth Amendment on February 17, 2014, June 17, 2014, June 10, 2015, and February 9, 2016. Amended Complaint, Fourth Claim ¶ 133. County Defendants argue in support of dismissal the first three of these seizures were justified by probable cause, and Plaintiff fails to allege any facts establishing he was seized on February 9, 2016. County Defendants' Memorandum at 15-16. In opposition, Plaintiff clarifies he alleges he was unlawfully seized during the first traffic stop on February 17, 2014, the second traffic stop on June 17, 2014, and the third traffic stop on June 10, 2015. Plaintiff's Response to County Defendants at 6. County Defendants do not argue in further support of dismissal on this point.

Preliminarily, the fact that Plaintiff, in opposing County Defendants' Motion, refers to the three traffic stops, but not to February 9, 2016, is consistent with County Defendants' argument that Plaintiff's bald assertion that he was unlawfully seized on February 9, 2016, is unsupported by any factual allegations of any incident on which Plaintiff's claims are based. Accordingly, the court does not further address Plaintiff's unlawful seizure claim with regard to February 9, 2016, and deems it abandoned.

Insofar as Plaintiff maintains each of the three traffic stops constituted unlawful seizures, a false arrest claim requires a plaintiff "prove that the underlying arrest lacked probable cause." *Brown v. Ontario County*, 787 F.Supp.2d 273, 275 (W.D.N.Y. 2011) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). As such, it is well-settled that "the existence of probable cause is 'a complete defense to [a civil rights action arising from an arrest],' whether brought under state law or Section 1983." *Brown*, 787 F.Supp.2d at 275 (brackets in original) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). Significantly, the first traffic stop pertained to the February 17, 2014 charges which Plaintiff admits was predicated by Defendant Cobb's observation that the vehicle Plaintiff was driving displayed an expired inspection sticker, establishing probable cause to stop Plaintiff for the traffic violation. *See United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017) (a traffic stop "must satisfy the Fourth Amendment's reasonableness limitation, which requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person has committed a traffic violation . . . ."). The second and third traffic stops were in connection with the first and second bench warrants issued by Judge Thierfeldt when Plaintiff failed to appear in Kiantone Town Court in connection with court proceedings regarding the February 17, 2014

charges. Plaintiff's November 10, 2015 conviction on the June 17, 2014 charges,

absent a reversal based on an unlawful seizure, is uncontroverted proof the second

traffic stop was supported by probable cause. *See Corsini v. Brodsky*, 731 Fed.Appx.

15, 18 (2d Cir. 2018) (affirming district court's dismissal of false arrest claims because

plaintiff's conviction on one charge stemming from incident for which the plaintiff was

arrested "necessarily establishes probably cause for both that arrest and the ensuing

prosecution") (citing *Cameron v. Fogarty*, 806 F.2d 380, 388-89 (2d Cir. 1986) ("where

law enforcement officers have made an arrest, the resulting conviction is a defense to a

§ 1983 action asserting that the arrest was made without probable cause.")).

Furthermore, the second and third traffic stops were pursuant to the first and second

bench warrants which are entitled to the presumption of probable cause. *Heyliger v.

Peters*, 771 Fed.Appx. 96, 98 (2d Cir. 2019) ("The existence of an arrest warrant

establishes a presumption of probable cause." (citing *Walczyk v. Rio*, 496 F.3d 139, 156

(2d Cir. 2007)). Accordingly, in the absence of a successful challenge to the February

17, 2014 charges, Plaintiff's November 10, 2015 conviction, or to the issuance of the

first and second bench warrants, Plaintiff cannot state a claim for unlawful seizure.

　　　　County Defendants' Motion should be GRANTED as to Plaintiff's claims of

unlawful seizure.

### b.    Excessive Force[22]

　　　　Plaintiff's excessive force claim is limited to his allegation that "Defendants

Mistretta, Cobb, Hover, Cresanti, and Raichel actions and use of force, described

---

[22] Insofar as Plaintiff maintains Defendants used excessive force in arresting him, such claim is properly asserted under the Fourth, rather than the Eighth Amendment. *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) ("The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest.").

herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated these Fourth Amendment rights of Plaintiff."  Amended Complaint, Fourth Claim ¶ 139.   In the Amended Complaint's Background, Plaintiff further alleges that in connection with the second traffic stop, Raichel smashed the vehicle's "window, unlocked the door, and forcefully removed Plaintiff from the automobile to the rear of the automobile where several officers including Hover forced Plaintiff to the pavement and handcuffed him."  Amended Complaint, Background ¶ 52.  In moving to dismiss, County Defendants maintain these allegations are insufficient to state a Fourth Amendment excessive force claim.  County Defendants' Memorandum at 16-17.  In opposition, Plaintiff argues that because he posed no immediate threat to the safety of the arresting officers, the force Defendants used against him on June 17, 2014, as well as on February 17, 2014, June 10, 2015, and February 9, 2016 was excessive.  Plaintiff's Response to County Defendants at 6 (citing Amended Complaint ¶¶ 47-53).  In further support of dismissal, County Defendants reiterate that Plaintiff's allegations in support of his excessive force claim are insufficient to plausibly state a Fourth Amendment violation.  County Defendants' Reply at 10.

Claims that police officers used excessive force during an arrest are analyzed under the Fourth Amendment reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  "To establish a claim of excessive force, 'a plaintiff must show that the force used by the officer was, in light of the facts and circumstances confronting him, 'objectively unreasonable' under Fourth Amendment standards.'"  *Davis v. Rodriguez*, 364 F.3d 424, 431 (2d Cir. 2004) (quoting *Finnegan v. Fountain*, 915 F.2d 817, 823 (2d Cir. 1990)).  Although "'under the Fourth Amendment's reasonableness standard,

excessive-force claims generally require at least *de minimis* physical injury,'"

*Lieberman v. City of Rochester*, 2011 WL 13110345, at * 5 (W.D.N.Y. Apr. 29, 2011)

(quoting *Rodriguez v. Passinault*, 637 F.3d 675, 687 (6ᵗʰ Cir. 2011)), an injury *per se* is

not required. *Id.* (citing cases). *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (holding

the amount of force, rather than the injury sustained, is the focus of a Fourth

Amendment excessive force inquiry, yet "the extent of the injury suffered by the plaintiff

is one factor that may suggest whether the use of force could plausibly have been

thought necessary in a particular situation."). Nevertheless, district courts within the

Second Circuit "have routinely dismissed excessive force claims where the plaintiff

alleged that he was thrown to the ground, but did not allege any physical injuries."

*Higginbotham v. City of New York*, 105 F.Supp.3d 369 (S.D.N.Y. 2015) (citing cases).

*See Haynes v. Acquino*, 2016 WL 3257821, at * 3 (W.D.N.Y. June 14, 2016) (finding in

context of qualified immunity that police officers' use of force to place the plaintiff, who

was resisting arrest for disorderly conduct, on the ground so as to apply handcuffs,

resulting in some minor bruising, was not unreasonable) (vacated on other grounds by

629 Fed.Appx. 670 (2d Cir. 2017)); *Lieberman*, 2011 WL 13110345, at * 5 (dismissing

Fourth Amendment excessive force claim of plaintiff who alleged only that he was

thrown to the ground and handcuffed, but declining to dismiss same claim of another

plaintiff who alleged he was shoved in the chest, lifted into the air and slammed into the

ground, causing the plaintiff to faint and ingest his own blood). Simply put, no

allegations in the Amended Complaint would support the court's inference that

Defendants' actions in throwing Plaintiff to the ground and placing him in handcuffs

"were objectively unreasonable or constituted more than a *de minimis* use of force."
*Higginbotham*, 105 F.Supp.3d at 376-77.

Accordingly, County Defendants' Motion should be GRANTED as to Plaintiff's
Fourth Amendment excessive force claim.

### c.    Intentional Infliction of Emotional Distress

Insofar as Plaintiff alleges a § 1983 claim based on an intentional infliction of
emotional distress, no such constitutional claim has been recognized within the Second
Circuit.  *See Scott v. City of Rochester*, 2019 WL 4016165, at * 4 (W.D.N.Y. Aug. 26,
2019) (citing *Anderson v. City of New York*, 2013 WL 6182675, at * 3 & n. 5 (S.D.N.Y.
Nov. 19, 2013) (observing "while there are no Second Circuit decisions on point, federal
courts in other districts have dismissed § 1983 claims for intentional infliction of
emotional distress because it is not a cognizable constitutional claim")).  Significantly,
the intentional infliction of emotional distress claim presented in *Rentas v. Ruffin*, 816
F.3d 214 (2d Cir. 2016), on which Plaintiff relies in opposing dismissal of this claim,
Plaintiff's Response to County Defendants at 6, was asserted pursuant to New York
law, not § 1983, as Plaintiff erroneously implies.  *Rentas*, 816 F.3d at 227.  Accordingly,
County Defendants' Motion should be GRANTED as to this asserted claim.

### 5.    Fifth Amendment

In his Third, Fifth, and Sixth Claims, Plaintiff references the Fifth Amendment.
Amended Complaint Third, Fifth, and Sixth Claims.  County Defendants argue in
support of dismissal that insofar as the Fifth Amendment protects against self-
incrimination, Plaintiff does not allege any County Defendant asked him anything other
than pedigree information which does not support a Fifth Amendment claim.  County

Defendants' Memorandum at 17-18.[23]  In opposition, Plaintiff quotes portions of the Fifth Amendment and argues unspecified Defendants deprived him of private property which they then converted for public use without just compensation.  Plaintiff's Response to County Defendants at 6-7.  In further support of dismissal, County Defendants assert such statements are conclusory and insufficient to state a Fifth Amendment claim. County Defendants' Reply at 5.

In light of Plaintiff's arguments opposing County Defendants' Motion on this claim, the court construes the Amended Complaint as alleging a violation of the Fifth Amendment's Taking Clause which prohibits the federal actors taking private property for public use without just compensation.  U.S. Const. Amend. V.  The Fifth Amendment, however, "'is applicable to federal actors, not state actors.'"  *Keitt v. NYS Dept. of Corrections and Community Supervision*, 2015 WL 2383687, at * 20 (W.D.N.Y. May 19, 2015) (quoting *Rosado v. Schneiderman*, 2014 WL 2763622, at *8 (N.D.N.Y. June 18, 2014)); *Burgess v. County of Rensselaer*, 2006 WL 3729750, at * 5 (N.D.N.Y. Dec. 18, 2006) (granting, *sua sponte*, summary judgment on Fifth Amendment claims asserted against municipal, rather than federal, actors).  A plain reading of the Amended Complaint establishes it is devoid of any assertion of federal action taken against Plaintiff.  Even if such a taking by state actors may be actionable under § 1983, Plaintiff's allegations are too generalized to plausibly allege such a violation.

Accordingly, County Defendants' Motion should be GRANTED as to Plaintiff's claims asserting violations of the Fifth Amendment.

---

[23] County Defendants address the Fifth Amendment's guarantees of due process and equal protection under the Fourteenth Amendment.  *See* Discussion, *infra*, at 45-46.

### 6.     Fourteenth Amendment

#### a.     Due Process

In his Fifth Claim, Plaintiff asserts a denial of liberty and property without due process in violation of the Fourteenth Amendment.  Amended Complaint, Fifth Claim ¶¶ 155, 157.  In support of dismissal, County Defendants argue such assertions are so conclusory as to be "threadbare" and insufficient to support a Fourteenth Amendment due process claim.  County Defendants' Memorandum at 19.  Insofar as Plaintiff relies on his being a "domiciliary of Connecticut" to deprive the Kiantone County Court of jurisdiction, County Defendants argue Plaintiff has never provided any proof of such domiciliary status and, in any event, does not deny the conduct giving rise to his arrest and conviction occurred in New York.  *Id.* at 20.  County Defendants further maintain Plaintiff fails to allege the precise right he claims was deprived without due process, and Plaintiff's November 10, 2015 conviction provides the court with no reason to depart from the general presumption such conviction was accompanied by the full panoply of due process protections.  *Id.*  In opposition to County Defendants' Motion, Plaintiff, for the first time, asserts that the classification by unspecified "Defendants" of Plaintiff in County and State government databases as a "domestic terrorist" without providing Plaintiff with an opportunity to rebut such classification violated the Fourteenth Amendment Due Process Clause.  Plaintiff's Response to County Defendants at 7.   In further support of dismissal, County Defendants argue Plaintiff's belated assertion fails to allege the requisite personal involvement or to specify what process he was denied. County Defendants' Reply at 5-6.

To state a Fourteenth Amendment due process claim, Plaintiff must identify the actors whom he alleges deprived him of due process, and must also specify what process he alleges was denied. *See Boyce v. Erie County*, 2014 WL 4923588, at * 4 (W.D.N.Y. Sept. 30, 2014) (dismissing plaintiff's Fourteenth Amendment due process claim for, *inter alia*, failing to name which defendants allegedly denied due process); *Walsh v. Goord*, 2007 WL 1572146, at * 5 (W.D.N.Y. May 23, 2007) (dismissing Fourteenth Amendment due process claim because Plaintiff failed to specify the how he was deprived of a protected liberty interest without due process). Here, Plaintiff neither identifies the databases on which Plaintiff maintains he is classified as a domestic terrorist, which Defendants arranged to have Plaintiff included in such database, nor the process Plaintiff maintains he was denied in being so classified. Furthermore, Plaintiff's allegations in support of this claim are so deficient as to violate the requirement of Fed.R.Civ.P. 8(a)(2) ("Rule 8(a)(2)"), of "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Accordingly, County Defendants' Motion to dismiss should be GRANTED as to Plaintiff's Fourteenth Amendment due process claim.

### b.    Stigma Plus

For his Third Claim, Plaintiff asserts a "stigma plus" claim alleging Defendants falsely referred to Plaintiff as a "sovereign citizen," a "constitutionalist," and a "domestic terrorist," to injure Plaintiff's reputation and alter Plaintiff's civil and political status.[24] Amended Complaint, Third Claim ¶ 110-11. County Defendants argue Plaintiff has

---

[24] As discussed, Discussion, *supra*, at 37-38, although Plaintiff asserts his stigma plus claim under the First Amendment, it is properly asserted as a deprivation of a protected liberty interest in violation of Fourteenth Amendment due process.

failed to allege the requisite deprivation of a tangible interest or property right to state a stigma plus claim. County Defendants' Memorandum at 20-21. In opposition, Plaintiff argues Defendants' references to Plaintiff as a "sovereign citizen" and "domestic terrorist" are particularly damaging to his reputation especially in light of Plaintiff's honorable service in the military. Plaintiff's Response to County Defendants at 7. In further support of dismissal, County Defendants reiterate that Plaintiff has not alleged any deprivation of a tangible interest or property right to support this claim. County Defendants' Reply at 6.

To state a viable stigma plus claim, Plaintiff must allege "(1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Salladah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds sub nom. Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 6-7 (2003)). "The state-imposed burden or alteration of status must be 'in addition to the stigmatizing statement.'" *Id.* (emphasis in original) (quoting *Doe*, 271 F.3d at 47). "Thus, even where a plaintiff's allegations would be sufficient to demonstrate a government-inspired stigma, such defamation is not, absent more, a deprivation of a liberty or property interest protected by due process." *Id.* (citing *Siegert v. Gilley*, 500 U.S. 226, 233 (1991)). Significantly, "'deleterious effects flowing directly from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." *Id.* (quoting *Valmonte v. Bane*, 18 F.3d 922, 1001 (2d Cir.

1994)).  Plaintiff's Amended Complaint in the instant case falls far short of alleging a stigma plus claim.

In particular, not only does Plaintiff fail to specify which Defendants purportedly made the derogatory reference to Plaintiff as a "sovereign citizen," a "constitutionalist," or a "domestic terrorist" sufficient to satisfy § 1983's requirement of a defendant's personal involvement, but Plaintiff also fails to allege any such statement was ever made public so as to damage Plaintiff's reputation.  Moreover, Plaintiff fails to allege any state-imposed burden or alteration of Plaintiff's status, in addition to the alleged stigma, as required for a deprivation of a liberty or property interest protected by due process.  Accordingly, Plaintiff has failed to state a claim for a stigma plus violation of the Fourteenth Amendment and, on this ground, County Defendants' Motion should be GRANTED.

### c.    Equal Protection

Plaintiff claims unspecified Defendants violated "Plaintiff's right to the Equal Protection of the Law."  Amended Complaint, Fifth Claim ¶ 168.  County Defendants argue in support of dismissal that this assertion is insufficient to plead an equal protection violation under a "selective enforcement" or "class of one" standard.  County Defendants' Memorandum at 21-22.  In opposition to dismissal, Plaintiff maintains he was "treated differently from others similarly situated."  Plaintiff's Response to County Defendants at 7.  In further support of dismissal, County Defendants point to Plaintiff's continued failure to reference a "'similarly situated' comparator" that was subjected to different treatment than Plaintiff.  County Defendants' Reply at 9.  Plaintiff's Amended Complaint fails to state a violation of equal protection under the Fourteenth Amendment.

In particular, the Fourteenth Amendment's "Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, *or malicious or bad faith intent to injure a person*.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (emphasis in original) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). Thus, a Fourteenth Amendment equal protection violation requires that the plaintiff allege discrimination because of membership in a suspect class. *Id.* Plaintiff, however, does not allege membership in any suspect class, requiring dismissal of the claim.

Alternatively, a so-called "class of one" equal protection violation may be predicated "on selective treatment motivated by ill-will . . . " *Bizzarro*, 394 F.3d at 86-87, requiring the Plaintiff allege that he has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Ruston v. Town Board for the Town of Skaneateles*, 610 F.3d 55, 58 *2d Cir. 2010). Again, Plaintiff has failed to offer any comparator who was subjected to different treatment for the same conduct, must less attempted to show that such difference in treatment is attributed to ill-will. Accordingly, Plaintiff has also failed to state an equal protection claim based on a class of one theory.

County Defendants' Motion should be GRANTED with regard to Plaintiff's Fourteenth Amendment equal protection claim.

### 7.    Abuse of Process

In his Sixth Claim, Plaintiff asserts abuse of process based on Defendants'
alleged violations of Plaintiff's Fourth and Fourteenth Amendments.[25]  Amended
Complaint, Sixth Claim ¶¶ 178-196.  County Defendants argue in support of dismissal
that the existence of probable cause defeats this claim, County Defendants'
Memorandum at 23, and Plaintiff cannot establish all the elements of this claim.  *Id.*  In
opposition, Plaintiff argues he has alleged the requisite predicate acts or omissions of
Defendants, including the use of fabricated evidence, to support his abuse of process
claim.  Plaintiff's Response to County Defendants at 8 (referencing Amended Complaint
¶¶ 51-59).  In further support of dismissal, County Defendants argue the use of
fabricated evidence is evidence only of improper motive, rather than an improper
purpose, *i.e.*, a collateral purpose beyond the criminal prosecution.  County Defendants'
Reply at 7-8.

Although Plaintiff has not obtained a reversal of his conviction on the June 17,
2014 charges, the presumptive proof of probable cause defeats Plaintiff's abuse of
process claim under at least some circumstances.  *See Tuccillo v. County of Nassau*,
723 Fed.Appx. 81, 82 (2d Cir. 2018) (stating "probable cause will defeat an abuse of
process claim under at least some circumstances, but recognizing there may be
circumstances under which probable cause will not defeat an abuse of process claim).
Nevertheless, here, Plaintiff has failed to allege the requisite collateral purpose of the
asserted abuse of process.  Specifically, a § 1983 claim based on abuse of process
borrows the elements of the state common law claim.  *Mangino v. Incorporated Village*

---

[25] Although often raised as a state claim, "[m]alicious abuse of criminal process also supports liability
under § 1983."  *Savino v. City of New York*, 331 F.3d 63, 76-77 (2d Cir. 2003).

*of Patchogue*, 808 F.3d 951, 958-59 (2d Cir. 2015).  Such elements include "1) the use of regularly issued legal process by the defendant to compel performance or forbearance of some act by the plaintiff, 2) with intent to do harm without excuse or justification, 3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  *Ingersoll ex rel. Estate of Ingersoll v. LaPlante*, 76 Fed.Appx. 350, 355 (2d Cir. 2003).  The collateral objective has been described as "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution."  *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003).  Toward this end, the use of fabricated evidence is not sufficient insofar as Plaintiff fails to allege how, assuming fabricated evidence was used by Defendants, it was used to achieve anything other than Plaintiff's conviction on the June 17, 2014 charges.

Accordingly, County Defendants' Motion should be GRANTED on this claim.

### 8.    *Monell* Liability

Insofar as Plaintiff asserts claims against Defendants Chautauqua County and Sheriff Gerace in their official capacity, County Defendants maintain the claims must be dismissed because such defendants are not subject to § 1983 liability based solely on *respondeat superior* but, rather, Plaintiff must establish the alleged constitutional deprivations were caused by an official municipal policy or custom.  County Defendants' Memorandum at 23-27.  In opposition, Plaintiff argues the County and Sheriff Gerace directly participated in the asserted violations by creating the policy or custom leading to such alleged violations.  Plaintiff's Response to County Defendants at 8.  Plaintiff further maintains Defendants County and Gerace had actual notice of a training deficiency and acted at Gerace's direction in encountering Plaintiff on June 17, 2014, and June 10,

2015.[26]  *Id.*  In further support of dismissal, County Defendants maintain Plaintiff's opposing arguments provide only conclusory assertions, unsupported by any facts. County Defendants' Reply at 11.

A § 1983 claim against a municipality cannot be maintained unless a plaintiff establishes the alleged deprivation of the plaintiff's federal constitutional rights resulted from "'a governmental custom, policy or usage of the municipality.'"  *Boans v. Town of Cheektowaga*, 5 F.Supp.3d 364, 373 (W.D.N.Y. 2014) (quoting *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978) ("*Monell*"))).  "'Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee.'"  *Id.*  "'[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.'"  *Id.* (quoting *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)).  Accordingly, "municipal liability may be found 'when the execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible for under § 1983.'"  *Id.* (quoting *Monell*, 436 U.S. at 691).

Here, Plaintiff, in opposing dismissal, references the Amended Complaint's allegations that he was subjected to a "high-speed rolling roadblock" following which Defendant Raichel smashed the vehicle's window, reached through the broken window into the vehicle window, unlocked the vehicle's door and removed Plaintiff from the

---

[26] Plaintiff also includes the encounter of February 9, 2016, which, as discussed, Discussion, *supra*, at 39, is not described.

vehicle. Plaintiff's Response to County Defendants at 8 (citing Amended Complaint ¶¶ 53, 54). Plaintiff also references the Amended Complaint's allegation that upon being transported to Chautauqua County Jail following the third traffic stop, Plaintiff observed another arrestee being escorted into the jail while a corrections officer remarked about having "another one of those sovereign citizens." *Id.* (citing Amended Complaint ¶ 63). None of these factual allegations is sufficient to allege *Monell* liability.

In particular, not only does Plaintiff not allege the use of a "high-speed rolling roadblock," the smashing of the vehicle's window to open the vehicle's door, or the forcible removal of Plaintiff from the vehicle was pursuant to an unconstitutional municipal policy, but Plaintiff also fails to identify the purported policy or the conduct against which Plaintiff maintains protection is needed. *See Hardy v. Erie County, N.Y.*, 2012 WL 1835624, at * 3 (W.D.N.Y. May 18, 2012) ("Plaintiff neither identifies the contours of the purported policy, nor identifies what types of conduct needed to be protected against, or how the policies were to protect against them."). Further, "[m]erely alleging that Defendants failed to institute adequate procedures is not enough to survive dismissal. Such a failure must first rise to the level of deliberate indifference to be actionable." *Id.* (citing cases). To establish the requisite deliberate indifference, the plaintiff must show

> (1) that a policy maker knows to a moral certainty that her employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights.

*Okin v. Village of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (internal quotation marks and citation omitted).

In the instant case, Plaintiff's allegations concerning the second traffic stop, involving the rolling roadblock, at best identifies only a single incident of misconduct which is insufficient to sustain a municipal liability claim.  *See Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy."); *Hardy*, 2012 WL 1835624, at *4 (plaintiff's assertion that defendant law enforcement officers acted pursuant to a municipal policy in violating her rights to be free from an unjustified excessive use of force in connection with a one-hour detention for suspected shoplifting was a "minimalist pleading" that failed to sustain a claim of municipal liability).  Moreover, with regard to Plaintiff's assertion that some unidentified corrections officer at the Chautauqua County Jail referred to another, also unidentified, individual as a sovereign citizen does not implicate Plaintiff.

Plaintiff thus has failed to sufficiently allege facts attributing any of his asserted constitutional violations to a municipal custom or policy so as to assert a claim for § 1983 liability under *Monell*.  County Defendants' Motion should be GRANTED as to Plaintiff's claims involving *Monell* liability.

## 4.    Immunity

County Defendants also assert they are shielded from liability on Plaintiff's claims based on qualified immunity, absolute immunity, and absolute judicial immunity.[27] County Defendants' Memorandum at 28-31.  The court considers each in turn.

---

[27] County Defendants advance an Eleventh Amendment immunity argument separate from their jurisdictional argument.  County Defendants' Memorandum at 29-30.  The court, however, has previously addressed this argument in connection with the discussion regarding jurisdiction.  *See* Discussion, *supra*, at 13-16.  Accordingly, the court finds it unnecessary to further address the iss

### A.    Qualified Immunity

"Qualified immunity shields 'government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)). "Qualified immunity thus affords government officials 'breathing room' to make reasonable – even if sometimes mistaken – decisions, and 'protects all but the plainly incompetent or those who knowingly violate the law' from liability for damages."  *Id.* Rather than an affirmative defense, "[q]ualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"  *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Saucier v. Katz*, 553 U.S. 194 (2001)).

 "[T]he doctrine shields officers from suit for damages if 'a reasonable officer could have believed' his action 'to be lawful, in light of clearly established law and the information he possessed.'"  *Manganiello*, 612 F.3d at 164 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (further citation and quotation marks omitted)).  "That is, '[e]ven if the right at issue was clearly established in certain respects . . . an officer is still entitled to qualified immunity if officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context.'"  *Id.* (quoting *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (further citation and quotation marks omitted)). "Whether qualified immunity applies in a particular case 'generally turns on the objective legal reasonableness' of the challenged action, 'assessed in light of the legal rules that were clearly established at the time it was taken.'"  *Distiso*, 691 F.3d at 240 (quoting *Messerschmidt*, 565 U.S. at 546).  "An officer is entitled to qualified immunity if '*any*

reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful.'" *Muschette ex rel. A.M. v. Gionfriddo*, 910 F.3d 65, 70-71 (2d Cir. 2018) (quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (italics in original)).

Here, Plaintiff alleges no facts calling into question whether any of the traffic stops and arrests of Plaintiff was not supported by probable cause. *See Singer*, 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").  Significantly, Plaintiff does not deny that the first traffic stop was precipitated by the display on the vehicle's windshield of an expired vehicle inspection sticker.  *See United States v. Harrell*, 268 F.3d 141, 148 (2d Cir. 2001) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").  The second and third traffic stops were based on warrants issued for Plaintiff's arrest based on his failure to appear in Kiantone Town Court on the February 17, 2014 charges and, as such, were also based on probable cause supporting qualified immunity.  *See Mara v. Rilling*, 921 F.3d 48, 73 (2d Cir. 2019) ("Even where a supporting affidavit is found to be deficient in stating probable cause, 'the fact that a neutral magistrate . . . issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner,' so as to merit qualified immunity." (quoting *Messerschmidt*, 565 U.S. at 546)).   Further, the *de minimus* use of force in effecting Plaintiff's arrest following the second traffic stop, *i.e.*, in which Plaintiff was forcibly removed from the vehicle, placed on the pavement and handcuffed, cannot be considered unreasonable under the relevant circumstances. *See Brooks v. Whiteford*, 384 F.Supp.3d 365, 369-71 (W.D.N.Y. 2019) (holding

defendant police officers entitled to qualified immunity on excessive force claim where plaintiff alleged only that he bumped his head and shoulder area when being placed into the patrol car).    Accordingly, Plaintiff has failed to allege facts which, if established, would deprive any Defendant of qualified immunity for the asserted § 1983 claims.

County Defendants' Motion should be GRANTED on the grounds of qualified immunity.

### B.    Absolute Prosecutorial Immunity

County Defendants argue Defendants A.D.A.s Bentley and Calimeri, acting within the scope of their duties in initiating and pursuing criminal prosecutions, are immune from civil suit for damages in § 1983 actions.    County Defendants' Memorandum at 29.    In opposition, Plaintiff argues prosecutorial immunity is not available insofar as Bentley and Calimeri are sued in their individual capacity.    Plaintiff's Response to County Defendants at 9.    In further support of dismissal, County Defendants assert Plaintiff misapprehends the application of prosecutorial immunity. County Defendants' Reply at 13.

"It is well-settled that prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process' are entitled to absolute immunity from an action for damages under § 1983." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).    This protection extends to prosecutors in their individual capacity.    *Id.* (citing *Lawson v. Abrams*, 863 F.2d 260, 262 (2d Cir. 1988)).    Significantly, Plaintiff does not attribute any injuries to Bentley and Calimeri other than in connection with such County Defendants' prosecution of Plaintiff on the February 17, 2014 and June 17,

2014 charges.  Accordingly, County Defendants Bentley and Calimeri are absolutely immune, in their individual capacity, from liability on Plaintiff's claims against them, and County Defendants' Motion should be GRANTED on this basis.

### C.    Absolute Judicial Immunity

County Defendants argue Defendant Judge Thierfeldt is entitled to absolute judicial immunity in connection with all actions taken with regard to Plaintiff's criminal matter.  County Defendants' Memorandum at 30-31.  In opposition, Plaintiff makes conclusory assertions that judicial immunity does not apply where a judge's actions were in error, taken with malice, or were in excess of the judge's authority.  Plaintiff's Response to County Defendants at 10.  In further support of dismissal, County Defendants observe that Plaintiff's allegations against Judge Thierfeldt pertain to a perceived lack of personal jurisdiction over Plaintiff's case given Plaintiff allegedly not being a New York resident.  County Defendants' Reply at 12-13 (citing Amended Complaint ¶¶ 41, 42, and 58).

It is well-settled that "[a] judge defending against a section 1983 suite is entitled to absolute immunity from damages for actions performed in his judicial capacity." *Fields v. Soloff*, 920 F.2d 1114, 1119 (2d Cir. 1990) (citing cases).  Even assuming, *arguendo*, Plaintiff's allegations that Judge Thierfeldt was without personal jurisdiction over Plaintiff in light of his asserted non-resident status, such fact would not defeat Judge Thierfeldt's absolute immunity because it is further settled that "'[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority.'"  *Carley v. Lawrence*, 24 Fed.Appx. 66, 67 (2d Cir. 2001) (quoting *Fields*, 920 F.2d at 1119).  Accordingly, County Defendants' Motion

should be GRANTED in favor of Judge Thierfeldt on the basis of absolute judicial immunity.

**5.    *Res Judicata***

County Defendants argue Plaintiff is barred from relitigating in this action any claims that could have been raised in his prior action arising out of the same operative facts. County Defendants' Memorandum at 5-6. In opposition, Plaintiff argues because the prior action was dismissed for lack of subject matter jurisdiction, rather than on the merits of his claims, the prior dismissal has no *res judicata* effect. Plaintiff's Response to County Defendants at 2-3. County Defendants do not argue in further support of dismissal on this ground.

The doctrine of *res judicata* bars a party from relitigating claims that were or could have been raised by that party in a prior forum where the litigation was resolved on the merits. *Maharai v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d Cir.1997). A federal court must give a prior state-court judgment "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984). *Res judicata* applies only if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.,* 214 F.3d 275, 285 (2d Cir.2000). In the instant case, because, as Plaintiff argues, Plaintiff's Response to County Defendants at 2, the prior action was dismissed for lack of jurisdiction and did not involve an adjudication on the merits, *res judicata* does not bar the instant action.

County Defendants' Motion should, on this ground, be DENIED.

**6.    Group Pleading**

County Defendants argue Plaintiff, by failing to precisely allege what unlawful actions he attributes to each Defendant, has engaged in "group pleading" in violation of Fed.R.Civ.P. 8(a)(1) for failing to demonstrate the personal involvement of each Defendant, requiring dismissal of the Amended Complaint. County Defendants' Memorandum at 32-33. Plaintiff, in opposition to dismissal, concedes that at times he refers in the Amended Complaint to "Defendants" in the collective, yet maintains the allegations against each Defendant are sufficiently distinguished elsewhere in the Amended Complaint. Plaintiff's Response to County Defendants at 10. In further support of dismissal, County Defendants maintain Plaintiff's arguments in opposition fail to cure the Amended Complaint's deficiencies. County Defendants' Reply at 4.

So-called "group pleading" fails to give fair notice of the claims asserted against each Defendant, *Holmes v. Allstate Corp.*, 2012 WL 627238, at * 22 (S.D.N.Y. Jan. 27, 2012), *report and recommendation adopted by* 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012), thus failing to satisfy the notice-pleading requirement of Rule 8(a)(2), *Iqbal*, 556 U.S. at 679. Nevertheless, as discussed above, in the instant action, although not a model pleading, the Amended Complaint sufficiently alleges claims for purposes of Rule 8(a)(2) requirement, albeit not otherwise valid, against each County Defendant. Accordingly, on this ground, County Defendants' Motion should be DENIED.

**7.    Punitive Damages**

Plaintiff, in response to County Defendants' argument that punitive damages are not available as against municipalities, County Defendants' Memorandum at 32,

maintains the request for punitive damages was included in error.  Plaintiff's Response

to County Defendants at 20.  Accordingly, County Defendants' Motion is GRANTED

insofar as it seeks dismissal of the request for punitive damages.

**8.    Declaratory Judgment and Injunctive Relief**

County Defendants argue that because Plaintiff's claims pertain to events

occurring in 2014 and 2015, there is no actual controversy, *i.e.*, no "'substantial

controversy between parties having adverse legal interests, of sufficient immediacy and

reality,'" to support declaratory or injunctive relief, such that Plaintiff essentially seeks an

advisory opinion which courts are not authorized to issue.  County Defendants'

Memorandum at 34-35 (quoting *Moss v. Moss*, 2014 WL 4669302, at * 4 (N.D.N.Y.

2014).  In opposition, Plaintiff merely recites the elements for claims of declaratory and

injunctive relief, Plaintiff's Response to County Defendants at 10-11, which County

Defendants maintain is insufficient to avoid dismissal.  County Defendants' Reply at 13.

As County Defendants argue, Plaintiff's claims for declaratory and injunctive

relief require an actual, live controversy.  *See Teichmann v. New York*, 769 F.3d 821,

826 (2d Cir. 2014) (requiring justiciability of § 1983 claim for declaratory or injunctive

relief, which is not present where claims are premised on past injury).  Accordingly,

County Defendants' Motion should be GRANTED insofar as Plaintiff seeks declaratory

and injunctive relief.

**9.    Dismissal with Prejudice**

Generally, a motion to dismiss under Rule 12(b)(6) for failure to state a claim is

without prejudice and with leave to file an amended complaint curing the deficiencies of

the dismissed original complaint.  *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949

F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead.").  Where, however, the plaintiff's pleadings' deficiencies are substantive such that better pleading will not cure them as, for example, with regard to lack of subject matter jurisdiction or time-barred claims, leave to replead would be futile, thus warranting dismissal without the opportunity to amend.  *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (where leave to replead would be futile dismissal may be with prejudice and without leave to file an amended complaint).  Further, where the responses in opposing dismissal are devoid of any indicia that the Amended Complaint's substantive deficiencies may be feasibly overcome, dismissal with prejudice is supported.  *Cf. Cortec Industries, Inc.*, 949 F.2d 50 (permitting leave to replead where "there is no suggestion from the averments of the complaint that an amendment would not supply the facts required to support the allegations and to cure the defect.").  Because Plaintiff, in the instant case, has utterly failed to suggest in his papers opposing dismissal how he could overcome the plethora of pleading deficiencies in the Amended Complaint, dismissal pursuant to Rule 12(b)(6) should be with prejudice and without leave to replead.

## **CONCLUSION**

Based on the foregoing, Cresanti's Motion (Dkt. 12) should be GRANTED;

County Defendants' Motion (Dkt. 15) should be GRANTED in part and DENIED in part;

A.G. James's Motion (Dkt. 28) should be GRANTED; and Raichel's Motion (Dkt. 30)

should be GRANTED.  The Amended Complaint should be DISMISSED with prejudice

and without leave to replead and the Clerk of Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     February 20, 2020
           Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the Plaintiff and to the attorneys for the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     February 20, 2020
          Buffalo, New York